IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **VERIGENT, LLC** )<br><br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**MICHAEL SCHIANO,** )<br>)<br>**Defendant.** )<br>_____) | **Civil Action No.: 3:17-cv-187**<br><br>**COMPLAINT** |

Plaintiff VERIGENT, LLC ("Verigent"), hereby brings this action against Defendant MICHAEL SCHIANO ("Schiano"), and alleges as follows:

## I.    NATURE OF THE ACTION

This is a Complaint against the Defendant Michael Schiano for misappropriation of his former employer's Verigent, LLC's Confidential Information and trade secrets; unfair and deceptive trade practices; breach of his contractual obligations to Verigent, LLC, including specifically violation of Confidential Information nondisclosure and client and employee nonsolicitation provisions; tortious interference with existing and prospective customer relations, and unjust enrichment.

## II. PARTIES, JURISDICTION AND VENUE

2.  Verigent is a Delaware limited liability corporation with its principal place of business and headquarters in Huntersville, Mecklenburg County, North Carolina.

3.  Schiano is, upon information and belief, a citizen and resident of the state of Maryland, and is a former employee of Verigent.

4. This Court has personal jurisdiction over the parties and subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332, by virtue of the fact that the Plaintiff and Defendant are citizens of different states such that there is complete diversity of citizenship, and the amount in controversy exceeds $75,000. The Defendant is subject to the personal jurisdiction of the Court pursuant to North Carolina's long arm statute, N.C. Gen. Stat. § 1-75.4.

5. Venue is proper in this Court as Plaintiff's principal office is located within the Western District of North Carolina.

### III. BACKGROUND FACTS

6. Plaintiff hereby realleges the allegations of paragraphs 1 through 5 as if fully set forth herein.

7. Verigent was founded in 2003 by its President Kevin Kiernan, and is a recognized industry leader in Telecom and IT Staffing. Verigent manages the technical staffing needs, both short term and permanent, for many of America's leading companies. Verigent's core services include contract staffing, contract to permanent through its Right to Hire program and permanent placement services. Verigent offers its staffing augmentation services in all 50 states and internationally. Verigent has received numerous awards and accolades related to its customer service to its clients. Verigent's success is due in large part to its deep and long-standing industry relationships and experience. Since its founding, Verigent has placed over 30,000 individuals with its customers.

8. Verigent's Telecom Services customers represent all areas of the telecommunications industry, including wireline and wireless carriers, equipment/infrastructure providers, government contractors, system integrators and large end users. Verigent provides personnel to these customers who possess expertise in a wide variety of areas including customer

2

service, technical support, engineering, installation, operations and maintenance, and project management.

9.     Verigent's IT clients represent professional services, managed services, IT outsourcing companies, system integrators and other technical service providers and end users. Verigent's IT services include providing personnel to assist customers with desktop support, application development, system administration, network administration, web development, network design/engineering, project management, network security, and many other services.

8.     Verigent is headquartered in Huntersville, North Carolina, and has offices in the Washington DC Metro area, the New York City Metro area, the Dallas/Ft. Worth, Texas Metro area and the Los Angeles, California Metro area.

9.     Verigent expends significant time and resources developing its relationships with its clients and prospective clients, and marketing its services.

10.     The nature of Verigent's business involves the use of confidential and trade secret information not generally known to the public or its competitors. Verigent has developed a number of methods of conducting its business and has compiled considerable client information which it considers confidential and which gives it a competitive advantage in the marketplace. Verigent specifically considers, and so informs its employees, that this information is confidential.   This information includes, but is not limited to, the unique needs and requirements of its clients which it learns through the cultivation of those client relationships over many years; client lists which identify the key decision makers within those companies, client preferences, special pricing, marketing plans, sales figures and projections, financial information, and detailed information regarding candidates, and other sensitive Company information not generally known to the public, hereinafter collectively referred to as "Confidential Information."

11. Verigent exercises reasonable efforts to maintain the confidentiality of the foregoing information. Those efforts include, but are not limited to, restricting access to its confidential information to select groups of employees with a need to know such information in order to perform their employment duties; requiring the use of computer passwords and usernames to access the information on Verigent's computer servers; and notifying employees that this sensitive business information is confidential.

12. Verigent's Confidential Information and trade secrets are located in its online ATS Database, on its computer servers in certain designated folders and in a common repository of documents on a shared drive. The ATS Database contains critical client information such as client lists, key contacts and decision makers, preferences and other proprietary information that has been exclusively developed by Verigent over many years and at substantial expense. On its servers, Verigent has various folders containing highly sensitive business information such as billing rates, client proposals, marketing and strategic information. Finally, Verigent's common repository of documents contains templates, forms and agreements which it has developed on its own and which are unique to Verigent. The foregoing information cannot be accessed without a username and password.

13. Verigent's client information has been compiled over 15 years and is known by employees to be extremely confidential and sensitive information crucial to the business, which is not to be shared with competitors or the general public.

14. Employees' access to the Verigent client list and pricing information is restricted, such that only employees with a Verigent login and password can access it.

15. In addition, those employees with a valid reason for needing remote access are granted login credentials to enable them to remotely access Verigent's servers through a Virtual

Private Network ("VPN") protocol. Verigent does not provide this to all of its employees. Verigent informs its employees that they are only permitted to remotely access its servers to perform their legitimate job duties for Verigent.

16.   Michael Schiano ("Schiano") first became employed with Verigent on April 19, 2010 as a Sales Account Manager.

17. As a Sales Account Manager, Schiano's duties included prospecting for new business, expanding business within the Company's existing account base, business development efforts, managing new and existing business relationships through frequent interaction and direct contact with customers, developing lists of target accounts based on business analysis and creating a marketing plan for selling services to those prospects, and managing the ongoing sales and candidate pipeline.

18.  In consideration of and as a condition of his new employment with Verigent, Schiano entered into an "Employment Agreement with Nondisclosure and Nonsolicitation Clauses" agreement with Verigent (hereinafter "2010 Agreement").   A copy of the 2010 Agreement is attached hereto and incorporated by reference as **Exhibit 1**.

19. In accordance with the 2010 Agreement, Schiano would be paid a salary and commission based upon his meeting certain earnings targets.   The 2010 Agreement also contained a Confidential Information non-disclosure provision, an employee non-solicitation provision, and a client non-solicitation provision.  The 2010 Agreement also required Schiano to return all Confidential Information and other Verigent property in his possession upon termination of his employment, whether voluntary or involuntary.

20.  In the 2010 Agreement, Schiano agreed that the following information constitutes Verigent highly proprietary Confidential Information which gives Verigent a competitive

5

advantage in and which is not generally accessible to and known in the industry due to Verigent's efforts to maintain the secrecy thereof: (a) the particular needs of Verigent's clients and the development and cultivation of Verigent's relationships with its clients; (b) documents and information regarding Verigent's clients, including but not limited to methods of soliciting, servicing and maintaining its client base, client preferences, pricing and specialized client requirements; (c) marketing plans, business plans, sales figures and all other financial plans and strategies of the Company; (d) resumes and other information supplied to or created by Verigent regarding candidates and prospective candidates for placement with clients; and (e) customer contacts who make hiring, utilization or employee decisions.

21. The 2010 Agreement made clear that the Schiano was being given access to the foregoing Confidential Information to enable him to perform his job duties for Verigent, and that he was prohibited from misappropriating, using, divulging the same for any reason.

22. At the time that Schiano commenced his employment with Verigent, Verigent did not have an office in the D.C. Metro Area. Schiano moved to Maryland to open and be responsible for the management of that new office in Rockville, Maryland.

23. From 2010 through 2015, Schiano continued to serve as a Sales Account Manager in the D.C. Metro Area office in Rockville, Maryland. From 2010 until 2014, Schiano was responsible for managing both recruiting and sales in the D.C. Metro office. Recruiting involves identifying candidates for placement with Verigent's business clients, evaluating their skill sets to determine which projects they are best suited for, discussing prospective project opportunities and pay rates, and then, once placed with a client, maintaining a relationship with that candidate/employee. The sales side of the business involves the development of the direct relationship between Verigent and the businesses with which they place employees, introducing

6

Verigent and its services and capabilities to those clients, describing the skills and experience of Verigent's available employees, and thereafter maintaining the client relationships through ongoing contact and cultivation of the client relationship.

24. In 2014 and 2015, Verigent began to reorganize its internal management structure by hiring a new Recruiting Director who became directly responsible for managing the recruiting function.

25. As a result of the foregoing changes, Schiano was promoted to the position of Regional Sales Manager, and thereafter was directly responsible for management and growth of sales within his territory which consisted of Virginia, Maryland, the District of Columbia, Delaware and Pennsylvania. As Regional Sales Manager, Schiano had broader authority over Verigent sales, which, in addition to his previous job responsibilities, included directing the staffing sales efforts of the Business Development team and leading the sales efforts in the region, managing the sales team, reviewing sales activity on a weekly basis with the sales team, and recruiting, hiring, training, supervising, and developing sales staff to create strong team members that contribute to the success and growth of the region.

26. In conjunction with the transition to his new position, and in consideration for an increase in his overall compensation, Schiano and Verigent entered into a new "Employment Agreement with Nondisclosure and Nonsolicitation Clauses" on December 14, 2015 (hereinafter "2015 Agreement"). A copy of the 2015 Agreement is attached hereto and incorporated by reference as **Exhibit 2**.

27. The 2015 Agreement contained the same Confidential Information nondisclosure, non-solicitation provisions as the 2010 Agreement and was in full force and effect at the time of Schiano's resignation from employment in May 2016. In addition to being prohibited from ever

misappropriating, using or disclosing Verigent's Confidential Information, Schiano was also bound by a non-solicitation provision prohibiting him from soliciting employees, candidates and clients during his employment and for a period of one year following termination of his employment. Specifically, Schiano was prohibited, in pertinent part, from the following conduct described herein.

28. Section 6.A. provides that, during his employment and for a period of one year following the termination of his employment with Verigent, Schiano will not solicit, encourage, or request, directly or indirectly, (i) any person engaged by Verigent, including both employees and independent contractors of Verigent, to leave the employ of Verigent or to become employed with or assigned to a competitor of Verigent; and/or any candidate for employment by Verigent or a client of Verigent that Schiano became aware of during his employment to become employed by a competitor of Verigent.

29. Section 6.B provides that, during his employment and for a period of one year following the termination of his employment with Verigent, Schiano will not call on or solicit in any manner any clients or employees of Verigent that Schiano had knowledge of while an employee of Verigent without obtaining Verigent's express written consent.

30. Section 7 is the "Document Delivery Clause" which requires Schiano to return all Verigent Confidential Information in any form in which it is maintained and any other documents belonging to Verigent upon termination of his employment for any reason.

31. In Section 11, Schiano agreed that a breach of his 2015 Agreement would cause Verigent irreparable harm and would entitle Verigent to injunctive relief, and all other legal remedies available to enforce the 2015 Agreement.

8

32. During his employment with Verigent, President Kevin Kiernan assigned a number of long time, established Verigent clients to Schiano. Kiernan had personally established and cultivated these client relationships, many of which began shortly after Verigent's founding in 2003. Approximately 75% of Schiano's active accounts had been assigned to him by Kiernan.

33. Schiano was not satisfied with his position as Regional Sales Manager, and began to openly complain about his duties, his co-workers, Kevin Kiernan, and Verigent as a whole.

34. Upon information and belief, on or about January 2016, without the knowledge or consent of Verigent, Schiano began to devise a plan to form a business in competition with Verigent, to begin to misappropriate Verigent's Confidential Information to use as the foundation for that business and to pursue client contacts and employees in violation of the non-disclosure and non-solicitation provisions of his 2015 Agreement.

35. By early February 2016, Schiano had decided that his new business would be called HireLink, and on February 10, 2016, he began the process of establishing a website for HireLink (www.hirelink.net) so that it would have an online presence and be ready to start business even before he left Verigent.

36. On April 1, 2016, Schiano submitted Articles of Organization for HireLink, LLC, a Maryland limited liability company, to the Maryland Department of Assessments & Taxation, and the company was officially registered and formed on April 5, 2016. A copy of the HireLink, LLC organizational documents are attached hereto and incorporated by reference as **Exhibit 3**. Schiano was listed as the registered agent and Authorized Person for HireLink, LLC. HireLink, LLC was formed to compete with Verigent in the Telecom and IT staffing business.

37. In furtherance of this scheme, Schiano began to access, download, transfer, and misappropriate Verigent Confidential Information from Verigent's ATS Database and its

computer servers, including its common repository of proprietary documents, to use in competition with Verigent once he formed his new business. Schiano systematically and methodically misappropriated a multitude of Verigent Confidential Information and to transfer the same to his own possession so that he would have all necessary tools to immediately begin soliciting Verigent's clients and to unfairly compete with Verigent in the marketplace by using its own misappropriated proprietary information against it. Schiano's activities in this regard included, but were not limited to, the following:

   a. In the days immediately surrounding the time of his formation of HireLink, LLC, Schiano accessed and, upon information and belief, downloaded or transferred Verigent's Master Agreements, Sales Agreements, new recruit packet, 2015 and 2016 Sales Management data regarding decisions reached, 2015 and 2016 pricing and client-specific billing rates, information regarding the Mid Atlantic Pipeline (anticipated business); marketing information; unique business document templates developed by Verigent and used in conducting business with clients and candidates; training information; employee reviews; customer agreements and other customer documentation; client lists and client-specific information; final bid documents; and a multitude of highly confidential information regarding specific clients and client projects.

   b. On or about this same time, Schiano accessed file directories and folders of other Verigent employees without any legitimate business reason relating to Verigent, upon information and belief, in order to misappropriate documents used by other employees and to gain information about client projects.

   c. Upon information and belief, approximately one week prior to his planned resignation, Schiano transferred Verigent Confidential Information to a newly established or existing Dropbox account.

38. Prior to his resignation, Schiano connected several USB thumb drives to his desktop and laptop computers for the purpose of transferring Verigent Confidential Information to these thumb drives in order to misappropriate the information for his own use in connection with operating his new business HireLink, LLC.

39. Upon information and belief, and in furtherance of this scheme, Schiano created several personal email accounts to use as vehicles for transferring and misappropriating Verigent

10

Confidential Information, by emailing attachments of such information to his personal email accounts. For example, in April 2016, Schiano emailed himself the requirements and requests for personnel that had been provided to Verigent by one of its clients in order to use this information to pursue that client's business through HireLink.

40. Schiano also attempted to access several other folders and areas of the Verigent computer servers which he was not authorized to access in an effort to misappropriate additional Confidential Information belonging to Verigent.

41. In the days and weeks leading up to his resignation, Schiano deleted numerous emails in a concerted effort to conceal his activities described above from Verigent.

42. On May 4, 2016 at approximately 9 AM, Schiano called Kevin Kiernan and gave verbal notice of his resignation. During the call, Schiano told Kiernan that he was under stress and was "burned out" and generally complained about the corporate reorganization, and stated that he wasn't sure what he was going to do next.

43. After giving Kevin Kiernan verbal notice of his resignation, Schiano connected one or more USB thumb drives to his desktop in order to misappropriate additional Verigent Confidential Information. Upon information and belief, Schiano was relatively certain that Verigent would require him to leave his employment earlier than his proposed May 18 date, and he therefore wanted to ensure that he had all of the Verigent Confidential Information in his possession he could gather before his separation from employment.

44. On the same day, Schiano emailed Kevin Kiernan a resignation letter, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**. In the letter, Schiano reiterated "I do not have other employment at this time. I plan on taking some time off and

11

figure out what the next step will be in my career." Schiano stated that his last day of employment would be May 18, 2016.

45. After receiving the resignation letter, Kevin Kiernan and Schiano had a discussion wherein it was agreed that Schiano's last day of employment would be May 18, 2016. Kiernan had no reason to believe that Schiano's continued presence at Verigent would present any sort of threat to the business or its' Confidential Information.

46. On May 12, 2016, Verigent Controller Rebecca Hardin sent Schiano a letter reminding him of his post-employment obligations contained in the 2015 Agreement. Schiano signed the letter, acknowledging his contractual obligations to Verigent, and returned the same to Verigent. The signed copy of this letter is attached hereto and incorporated by reference as **Exhibit 5**.

47. Prior to his resignation, Schiano contacted certain critical Verigent clients and prospective clients to inform them that he was leaving Verigent because of Verigent's ongoing failure and inability to recruit qualified candidates and inability to fulfill client requirements, and that he was starting his own staffing company. Schiano intended to disparage Verigent with this false information regarding its recruitment of candidates in order to cause Verigent's clients to consider ceasing to do business with Verigent and transferring their staffing business to Schiano and HireLink, LLC.

48. Upon information and belief, Schiano was using Verigent Confidential Information about these clients and the business they had conducted with Verigent to attempt to solicit them for business and obtain an unfair competitive advantage over Verigent.

12

49. During his two week notice period following his resignation notice, Schiano remotely accessed Verigent's server and misappropriated additional Verigent Confidential Information, without the knowledge or approval of Verigent.

50. In approximately late August/early September of 2016, Schiano contacted Kevin Kiernan to inform him that he had been contacted by a Verigent client in Maryland to gauge his interest in an internal, strategic sourcing position, and wanted to clear it with Kiernan before accepting it because he did not want to engage in any activities that violated his 2015 Agreement. Later in 2016, Schiano contacted Kiernan again and stated that this same Verigent client had contacted him again and made him an offer for the same position, but he had declined. Upon information and belief, Schiano never intended to accept this position, but contacted Kiernan on both occasions to mislead him about his activities and to determine whether Kiernan had discovered his acts of misconduct and disloyalty in the months preceding his departure.

51. During the summer and fall of 2016, Schiano was actively engaged in efforts to expand HireLink's reach by registering it to conduct business in several other states, including Virginia, Illinois, New York and New Jersey.

52.   In November 2016, Schiano contacted Brandon Frenette, Recruiting Leader in Verigent's Maryland Office, and Garrett Godwin, Strategic Account Manager for Verigent in North Carolina, and solicited them for employment with HireLink.  Schiano offered employment for them with HireLink and told them he would split the finders' fee with them for any placements they were able to make.   Frenette and Godwin declined Schiano's offer.

53. Beginning in December 2016, Verigent began to receive information that Schiano was competing with Verigent and was soliciting Verigent's clients in violation of his 2015

13

Agreement. On each occasion, Schiano informed the Verigent clients that he had started his own staffing business, which, upon information and belief, was HireLink, LLC.

54. On or about December 7, 2016, Schiano posted a job opportunity on behalf of a Verigent client located in Maryland through his HireLink LinkedIn account. HireLink was recruiting to place someone permanently at the client in direct violation of Schiano's 2015 Agreement. This was the same Verigent client that Schiano claimed was seeking to hire him for an internal position.

55. On or about this same time, through HireLink, Schiano also placed a consultant with a Verigent client located in Maryland, for which he was paid.

56. Upon information and belief, in February 2017, Schiano became employed with Rightech, a direct competitor of Verigent in the telecom and IT staffing business, as a Vice President Rightech has an office in Gaithersburg, Maryland.

57. Since commencing his employment with Rightech, Schiano has continued to solicit Verigent clients in violation of his 2015 Agreement. As a direct result of Schiano's solicitation of these clients and, upon information and belief, his use of such Verigent Confidential Information as billing rates, Rightech has been able to begin obtaining the staffing business of several Verigent clients. With respect to each of these Verigent clients, Rightech had tried for years to obtain their business but were unable to do so prior to Schiano's becoming a Rightech employee.

58. Upon information and belief, since becoming an employee of Rightech, Schiano has used Verigent Confidential Information that he misappropriated prior to his resignation to perform his job duties for Rightech, and he has disclosed Verigent Confidential Information to Rightech for its use to unfairly compete against Verigent.

59. In March 2017, Verigent conducted a thorough forensic analysis of the computers used by Schiano during his employment with Verigent. This analysis revealed, for the first time, the full scope of Schiano's misappropriation of Confidential Information and trade secrets belonging to Verigent, and the potential threat that this conduct presents to Verigent's business.

60. Schiano's conduct as described above has damaged Verigent in the form of lost revenues from long-standing and important clients and potentially recurring damage due to Schiano and Rightech's penetration into Verigent's previously secure and stable client relationships.

61. Schiano has failed and refused to abide by the provisions of his 2015 Agreement, and continues to be in violations thereof by soliciting Verigent clients, and possessing, using and disclosing Verigent's Confidential Information and trade secrets.

**FIRST CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**(North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et. seq*)**

62. The allegations of Paragraphs 1 through 61 are hereby realleged and incorporated by reference as if fully set forth herein.

63. Verigent's confidential business information and practices constitute trade secrets pursuant to the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et. seq.*

64. Specifically, Verigent's Confidential Information, as defined above in this Complaint, including but not limited to its compilations of customer information, customer preferences and staffing needs and requirements, , client-specific billing rates, marketing plans, unique client development methods, Verigent's unique business forms and templates, sales and other financial figures, and financial plans and strategies, constitute trade secrets.

65. Verigent derives actual and potential independent economic benefit from such

information not being generally known to the public or others, such as direct competitors, who could obtain economic value from its disclosure or use, and from this information not being readily ascertainable by proper means to persons not employed by Verigent.

66. Verigent has exercised reasonable efforts to maintain the secrecy and confidentiality of its confidential, proprietary and trade secret information.

67. During the course of his employment with Verigent, Schiano had access to, reviewed, and used Verigent's Confidential Information and trade secrets, and was only permitted to do so in furtherance of his legitimate job-related duties for Verigent.

68. Prior to his resignation, Schiano accessed and acquired Verigent Confidential Information for his own use and benefit and not for reasons relating to his Verigent job duties, but for reasons detrimental to Verigent.

69. Schiano has misappropriated Verigent's trade secrets for his own benefit and, upon information and belief, continues to use this information to unfairly compete against Verigent.

70. Schiano's continued possession and use of Verigent's trade secrets presents a serious and ongoing risk of disclosure and/or use of those trade secrets.

71. Schiano's misappropriation of Verigent's trade secrets was and is willful, malicious and in bad faith.

72. Verigent has been substantially damaged and injured as a proximate result of Defendants' wrongful conduct as described above in an amount to be established at trial is entitled to the relief set forth below.

73. Verigent is also entitled to an award of punitive damages and reimbursement of its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 66-154 as a result of Schiano's willful and malicious misappropriation.

**SECOND CAUSE OF ACTION**
**Breach of Contract – Violation of Confidential Information Non-Disclosure**
**Clause and Document Delivery Clause**

74. The allegations of Paragraphs 1 through 73 above are hereby realleged and incorporated by reference as if fully set forth herein.

75. The Confidential Information Clause of Schiano's 2015 Agreement specifically prohibits him from misappropriating Confidential Information belonging to Verigent.

76. Schiano's actions, as described above, in accessing and misappropriating Verigent's Confidential Information without Verigent's authorization or knowledge, and his use and disclosure thereof, constitutes a material breach of the Confidential Information Clause of his 2015 Agreement.

77. Verigent is entitled to preliminary and injunctive relief against Schiano as a result of the contractual violation set forth above.

78. Further, upon information and belief, as a consequence of Schiano's violation of the Confidential Information Clause of his 2015 Agreement, Verigent has been and continues to suffer financial damages and will continue to suffer financial damages.

79. Verigent is entitled to damages from Schiano for the violations alleged herein and other violations that may be identified through discovery.

**THIRD CAUSE OF ACTION**
**Breach of Contract – Violation of Non-Solicitation Clause**

80. The allegations of Paragraphs 1 through 79 are hereby realleged and incorporated by reference as if fully set forth herein.

81. The Nonsolicitation Clause of Schiano's 2015 Agreement specifically prohibits him, during his employment and for a period of one year after termination of his employment, from

17

soliciting or attempting to solicit the business of any of Verigent client on behalf of himself or any other business that provides services in the staffing industry.

82. This same provision also prohibits Schiano, during his employment and for a period of one year after termination of his employment, from soliciting any Verigent employees to leave the employ of Verigent to become employed with any person or business in competition with Verigent.

83. Beginning prior to his resignation from employment, and continuing to the present, both on behalf of his business HireLink, LLC and his new employer Rightech, Schiano has solicited and continues to solicit Verigent clients to conduct business with him.

84. Schiano has also solicited Verigent employees for employment in violation of this same provision.

85. Schiano's solicitation of Verigent's clients and employees as described above constitutes a breach of the Nonsolicitation Clause of his 2015 Agreement.

86. Verigent is entitled to preliminary and injunctive relief against Schiano as a result of the contractual violation set forth above.

87. Further, as a consequence of Schiano's violation of the Nondisclosure Clause of his 2015 Agreement as set forth above, Verigent has been and continues to suffer financial damages and will continue to suffer financial damages.

88. Verigent is entitled to damages in an amount to be proven at trial from Schiano for the violations alleged herein and other violations that may be identified through discovery.

### FOURTH CAUSE OF ACTION
**Tortious Interference with Existing and Prospective Business Relations**

89. The allegations of paragraphs 1 through 88 are hereby realleged and incorporated by reference as if fully set forth herein.

18

90. Since its founding in 2003, Verigent has established a number of stable and important client relationships. Recurring business from these clients is a critical component to Verigent's future success.

91. Verigent aggressively protects its client relationships and has made its employees and competitors aware of this practice.

92. Schiano is aware of the foregoing customer relationships by virtue of his employment with Verigent.

93. Upon information and belief, Schiano has made false and disparaging remarks regarding Verigent and its ability to fulfill the needs of its clients in order to intentionally harm Verigent's client relationships and to gain an unfair competitive advantage over Verigent.

94. Schiano's conduct as described above has damaged and interfered with Verigent's client relationships and has potentially impaired Verigent's ability to continue conducting business with these clients in the future.

95. Schiano's conduct in tortiously interfering with Verigent's existing and prospective client relationships was conducted for a wrongful purpose, without justification and continues to be willful, malicious, and in complete disregard of Verigent's interests in maintaining those client relationships.

96. As a direct and proximate result of Schiano's tortious interference with Verigent's client relationships, Verigent has suffered damages and will continue to suffer damages.

97. Verigent is entitled to damages from Schiano for the violations alleged herein and other violations that may be identified through discovery.

**FIFTH CAUSE OF ACTION**
**Unfair and Deceptive Trade Practices**
**(N.C. Gen. Stat. § 75-1.1 *et. seq.*)**

98. The allegations of Paragraphs 1 through 97 are hereby realleged and incorporated by reference as if fully set forth herein.

99. Schiano's actions described above which constitute misappropriation of trade secrets and tortious interference with existing and prospective business relations were in and affecting commerce as defined by N.C. Gen. Stat. § 75-1.1 *et seq.*

100. Schiano's actions as set forth above constitute unfair methods of competition and unfair or deceptive trade practices in and affecting commerce in violation of N.C. Gen. Stat. § 75-1.1 *et seq.*

101. As a direct and proximate result of Schiano's unfair and/or deceptive methods, acts or practices, Verigent has been damaged in an amount to be established at trial is entitled to the relief set forth below.

102. Verigent is also entitled to an award of treble damages pursuant to N.C. Gen. Stat. § 75-16 for damages sustained as a result of Schiano's unfair and deceptive conduct.

103. Verigent is also entitled to an award of its reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**

104. The allegations of paragraphs 1 through 103 above are hereby realleged and incorporated herein by reference as if fully set forth herein.

105. Verigent conferred a benefit upon Schiano during his employment, namely, access to confidential and trade secret information regarding Verigent's clients and business. Verigent

conferred such access to Schiano for the sole purpose of allowing him to perform his job duties for the benefit of Verigent.

106. Schiano's misappropriation of Verigent's confidential and trade secret information has resulted in an unjust enrichment to Schiano under circumstances where it would be inequitable for Schiano to utilize, enjoy or retain that property without Verigent being duly compensated for its value.

107. Schiano's conduct as alleged above has threatened the confidential nature and integrity of Verigent's confidential and trade secret information and presents a serious threat to Verigent's business as Schiano's possession of this information has enabled and will continue to enable Schiano to use the information in competition with Verigent to solicit and gain the business of Verigent's clients to Verigent's significant detriment.

108. As a direct and proximate result of Schiano's improper conduct, Verigent is entitled to be reimbursed and compensated for Schiano's unjust enrichment and is entitled to the disgorgement of any and all profits, earnings, and commissions attributable to Schiano's wrongful action. Additionally, Verigent is entitled to punitive damages as a result of Schiano's willful, reckless, and malicious actions intended to harm Verigent.

WHEREFORE, Verigent prays for the following relief:

1.    Upon application, for a Preliminary Injunction and Permanent Injunction enjoining Defendant Schiano, and all others acting in concert therewith, from violating the terms of the 2015 Agreement.

2.    Upon application, for a Preliminary Injunction and Permanent Injunction enjoining Defendant Schiano, and all others acting in concert therewith, from directly or indirectly, divulging, disclosing or communicating any Verigent Confidential Information.

21

3.  Upon application, for a Preliminary Injunction and Permanent Injunction enjoining Defendant Schiano, and all others acting in concert therewith, from soliciting or attempting to solicit, the business of any of Verigent's clients.

4.  Upon application, for a Preliminary Injunction and Permanent Injunction enjoining Defendant Schiano, and all others acting in concert therewith, from hiring, employing soliciting or attempting to solicit or induce any person employed with Verigent.

5.  That the above-requested Preliminary Injunction be issued for the period of time until trial of this action, unless such time is modified by subsequent order of the Court.

6.  For an order and judgment requiring specific performance of Defendant Schiano's contractual obligations to Plaintiff Verigent under Sections 5, 6 and 7 of his 2015 Agreement.

7.  An accounting of any gain received, directly or indirectly, by Defendant Schiano by virtue of wrongful acts as described herein;

8.  For actual damages, in an amount to be established at trial, in excess of $75,000.

9.  For prejudgment interest and post-judgment interest on any award of damages at the highest rate permitted by contract or applicable law.

10. That the costs of this action be taxed against Defendant Schiano.

11. That the Plaintiff have and recover from the Defendant its reasonable attorneys' fees as authorized pursuant to applicable law;

12. That this matter be tried before a jury; and

13. For such further relief that this Court deems just and proper.

This 6th day of April, 2017.

/s/ G. Bryan Adams III
G. Bryan Adams, III
N.C. Bar No. 17307
VAN HOY, REUTLINGER, ADAMS & DUNN, PLLC
737 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 375-6022
Fax:  (704) 375-6024
Email:  bryan.adams@vradlaw.com

**ATTORNEYS FOR PLAINTIFF**
**VERIGENT, LLC**